```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF OKLAHOMA
```

MARY B. KOVAR,                  )
                                )
          Plaintiff,            )
                                )
v.                              )     Case No. CIV-12-298-RAW-KEW
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security Administration,        )
                                )
          Defendant.            )

## REPORT AND RECOMMENDATION

Plaintiff Mary B. Kovar (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on April 30, 1968 and was 43 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a hair stylist. Claimant alleges an inability to work beginning April 1, 2011 due to limitations resulting from rheumatoid arthritis, neck pain, sciatica, and anxiety.

**Procedural History**

On April 26, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On February 14, 2012, an administrative hearing was held before ALJ Trace Baldwin in McAlester, Oklahoma. On March 16, 2012, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on June 5, 2012. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a range of light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly assess Claimant's credibility; (2) arriving at a faulty

4

RFC determination; and (3) failing to fully and fairly develop the record.

## Credibility Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of fibromyalgia, degenerative disk disease of the cervical spine, and depression. (Tr. 14). He also found Claimant retained the RFC to perform light work except that she must be able to alternate sit/stand at will, she could occasionally push/pull, including the operation of hand/foot controls. The ALJ also limited Claimant to only occasionally climbing ramps and stairs and never climbing ladders, ropes, or scaffolding. She could perform simple tasks with routine supervision. She could relate to supervisors and co-workers on a superficial work basis but cannot work with the general public. She could adapt to a work situation. (Tr. 16). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative occupations of merchandise marker and silver wrapper. Claimant was found to also be able to perform the sedentary occupations of addresser and microfilm document preparer. (Tr. 23).

Claimant contends that the ALJ erred in discounting Claimant's credibility as to pain. Claimant testified that while working as a hair stylist, she found she could not stand and her hands would

5

not allow her to work. She stated that they would lock up and swell about halfway through the day because of inflammation. (Tr. 34-36). She quit working a year prior to the hearing. Claimant testified she could no longer fix her own hair, could vacuum on and off, doing a little at a time and quitting. Claimant does the same with housework. Claimant's daughter does the laundry. Claimant does not drive much because she cannot turn her neck real quick which she fears. She has a broken down muscle in her neck and she has muscle spasms. Claimant has had a number of car wrecks. Claimant experiences headaches which she associates with TMJ. Her oral surgeon wants to do surgery for TMJ but she cannot afford it. (Tr. 37-40). Claimant also testified that she has a pinched sciatic nerve giving her problems with her hips and making it hard to stand on the job. (Tr. 41).

The ALJ makes the typical boilerplate finding which states "claimant's statements concerning the intensity, persistence and limiting effects of these alleged symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." As this Court has stated on numerous occasions, this rote statement reverses the appropriate analysis – the ALJ should be evaluating Claimant's testimony as evidence in the case before reaching his RFC determination. Moreover, the ALJ

6

states that the muscle spasms in the neck, burning in the back, mental health, fibromyalgia, degenerative and rheumatoid arthritis, headaches, and tremors of which Claimant complains are not disabling because Claimant has received little medical treatment for the conditions. (Tr. 18).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or

sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ did not go through this analysis in assessing Claimant's credibility. Claimant testified she did not have the resources to seek treatment upon inquiry of the ALJ. (Tr. 42-43). Yet, the ALJ appears to have ignored this testimony and judged Claimant's credibility solely upon her failure to seek further medical treatment. On remand, the ALJ shall evaluate Claimant's credibility upon the factors set forth in the regulations and ascertain whether the reason Claimant has not sought treatment is because of financial limitations.

**RFC Assessment**

Claimant also contends the ALJ erred in reaching his RFC determination because he failed to properly evaluate the opinion evidence of her treating physician, Dr. Gerald Rana. Dr. Rana completed an Attending Physician's Statement on November 11, 2008. In the Statement, Dr. Rana diagnoses Claimant with cervical strain, osteoarthritis, polymyalgia, neuralgia, and arthalgia. He estimates Claimant would have to take unscheduled breaks, have good days and bad days, have to be absent from work more than four days per month, could not engage in pushing or pulling, and could not

8

engage in fine manipulation.  He found Claimant could use her feet for repetitive movements but she might experience back pain.  (Tr. 327).

The ALJ rejected Dr. Rana's opinion, stating that Claimant's continued working as a hair dresser invalidated the "very pessimistic statement."  (Tr. 20).  In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight."  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  Id. (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Id. (quotation omitted).  The factors reference in that section are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the

9

treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ did not explore whether Claimant was experiencing the problems and limitations set forth in Dr. Rana's statement but rather speculated that by continuing to work the statement must be invalid. The ALJ did not explore Claimant's employment attendance or any other of the restrictions found by Dr. Rana to ascertain

10

whether the opinion was supported.  This analysis is insufficient under Watkins.  On remand, the ALJ shall re-examine Dr. Rana's opinions and the basis for them.

**Duty to Develop the Record**

Claimant essentially repeats her arguments regarding the lack of funds for Claimant's treatment and that the ALJ should have developed the record more to ascertain if this was the basis for not seeking treatment.  Claimant also states without expansion that the ALJ should have ordered consultative examinations for mental health issues and for her physical problems with her hands, back, and headaches.  Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993).  As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come

11

to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

This Court will not specifically direct that the ALJ should order additional consultative examinations without more evidence demonstrating the need for the same. Should the ALJ determine that consultative examinations are necessary, he obviously has the discretion to do so.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will

preclude appellate review of this decision by the District Court based on such findings.

DATED this 6th day of September, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE